# United States Court of Appeals
## For the First Circuit

No. 13-2216

UNITED STATES OF AMERICA,

Appellant,

v.

FERNANDO CRESPO-RÍOS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Jenifer Yois Hernández-Vega, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellant.
Rachel Brill for appellee.

May 22, 2015

**LYNCH, <u>Chief Judge</u>**.  This is a sentencing appeal by the government.  On January 11, 2012, defendant Fernando Crespo-Ríos, then aged 46, pled guilty to two crimes: (1) transferring obscene material to a minor, and (2) possessing child pornography.  The Probation Office calculated a guideline sentencing range between 70 and 87 months, and a term of supervised release between 5 years and life.  On August 15, 2013, the district court sentenced the defendant to imprisonment for the time that he had already served -- which amounted to 13 days -- and 15 years of supervised release. The government appeals this sentence as substantively unreasonable. Because the district court failed to provide an adequate explanation as required by law for this extraordinary variance, we <u>vacate</u> the sentence and <u>remand</u> the matter for resentencing.  Of course, in remanding, we do not express any opinion as to what the sentence should be.

I.

From August 2007 to April 2008, the defendant communicated online with a Special Agent of the FBI, who was posing as a twelve-year-old Puerto Rican girl.  Despite being informed of her age, the defendant's conversations were explicitly sexual in nature.  The defendant "used a web camera to transmit to the 'minor' on several occasions apparently live images of his genital area and his erect penis."  He also "repeatedly encourage[d] the 'minor' to engage in sexual activities with him or for him."  He

suggested that the minor "masturbate, model a g-string for him, exchange underwear with him, bathe him, engage in sex or oral sex with him, watch pornographic films before having sex, and have his child." He asked the minor to meet him, or to transmit images of herself.

Based on information learned from these chats, federal agents secured a search warrant for the defendant's home and computer. During their search, the FBI found between 300 and 600 images of child pornography. "[T]he images contained bondage, oral sex with ejaculation, adults penetrating children and children performing sex with other children." In addition, the FBI found a video that "shows a girl of approximately thirteen (13) years old, that has been tied by her neck, ankles and wrists, while an adult performed oral, vaginal and anal sex."

The defendant was indicted on May 29, 2008, for knowingly possessing both still images and movie files of minors engaged in sexually explicit conduct, and knowingly attempting to transfer obscene material to someone who was under the age of 16. He was arrested the next day, and remained in jail until he posted a secured bond of $100,000 on June 13, 2008, when he was released to home incarceration. On September 16, 2008, the magistrate judge modified the conditions of the defendant's release from home incarceration to home detention with electronic monitoring. On

August 3, 2010, the magistrate judge eliminated home detention and electronic monitoring, and imposed a curfew.

On January 11, 2012, Crespo-Ríos entered a straight plea to both counts of the indictment.[1]  The district court held a sentencing hearing over a year later, on January 30, 2013.  In the Presentence Investigation Report ("PSR"), the Probation Office had calculated a guideline sentencing range between 70 and 87 months imprisonment, and identified no bases for a departure or a variance.  Crespo-Ríos requested a downward variant sentence of time served, arguing that he had a low risk of recidivism, that registering as a sex offender is a significant additional punishment, and that U.S.S.G. § 2G2.2 is an "extremely flawed Guideline."  In response, the government asked the court to sentence the defendant in accordance with the applicable sentencing guidelines, between 70 and 87 months.

At the sentencing hearing, the defendant introduced a psychological evaluation from Dr. José Méndez, dated August 22, 2009.  The district court ordered an updated psychosexual report

---

[1]  The three and a half years that elapsed between the defendant's indictment and plea is due in part to litigation concerning his motion to suppress.  On February 23, 2009, the defendant filed a motion to suppress the evidence of child pornography found at his home.  On April 13, 2009, the magistrate judge recommended denying the motion.  On June 5, 2009, the district court rejected the magistrate's recommendation, and granted the motion to suppress.  On June 8, 2011, we reversed the district court's order and remanded with instructions to deny the motion to suppress.  United States v. Crespo-Ríos, 645 F.3d 37 (1st Cir. 2011).  The defendant pled guilty seven months later.

"[b]ecause the only way that I'm going to be able to either depart or go to a variance in this case is for me to be satisfied at this time that defendant does not pose a threat to society in the sense of coming forward and doing anything to children." The sentencing hearing was rescheduled as a result.

The second sentencing hearing was held on August 15, 2013. Dr. Vanessa Berríos Méndez, who completed the requested psychosexual report, testified about her findings. When the court asked about the defendant's risk of recidivism, Dr. Berríos responded: "I believe that the risk is low as long as he goes to treatment . . . . [a]nd if he controls his substance abuse." The defendant re-iterated his arguments for a sentence of time served, particularly emphasizing the evidence of his low risk of recidivism. The government asked the district court to consider the other factors in 18 U.S.C. § 3553(a), including the need to consider the seriousness of the offenses, to promote respect for the law, to provide just punishment, and to avoid sentencing disparities among similarly situated individuals.

Ultimately, the district court granted the requested variance and sentenced the defendant to the time that he had already served -- 13 days. The defendant was also sentenced to 15 years of supervised release with, among other conditions, no access to the internet, a requirement that he register as a sex offender,

and a requirement that he participate in sex offender treatment.[2]
By way of explanation, the district court stated:

> [T]he Court considers that there are some factors in this case that are salient, and those are the personal history and characteristics of the defendant as well as the potential for rehabilitation. And in view of this conclusion of the psychosexual assessment report, the Court in this case will enter into or grant a variance in this case.

The court's exclusive focus was on the personal history and characteristics of the defendant. Although the court later mentioned that the "offense" was "very serious," it did not explain how it had factored that into its § 3553(a) analysis. And the court offered no explanation about its ultimate view on the need for general deterrence or the potential for sentencing disparities. When the government objected, the district court explained that it "ha[d] taken into consideration all the evidence that is really on the record, and it consider[ed] that in this particular case and taking into account the individualization of this defendant, the sentence [was] justified." Although district courts must provide a written statement of reasons for any sentence outside the recommended guideline range, see 18 U.S.C. § 3553(c)(2), the district court did not do so here. The government now appeals, arguing that the defendant's sentence is substantively unreasonable.

---

    [2] The defendant has made no objection to the conditions of supervised release imposed in this case.

II.

We review the substantive reasonableness of the sentence imposed for abuse of discretion. Gall v. United States, 552 U.S. 38, 51 (2007). "There is rarely, if ever, a single correct sentence in any specific case." United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014). Instead, we ask "whether the sentence, in light of the totality of the circumstances, resides within the expansive universe of reasonable sentences." United States v. King, 741 F.3d 305, 308 (1st Cir. 2014). Generally speaking, a sentencing court must explain the reasoning behind the sentence it chooses.[3] See United States v. Fernández-Cabrera, 625 F.3d 48, 53 (1st Cir. 2010). And, we will find no abuse of discretion if "the court has provided a plausible explanation, and the overall result is defensible." United States v. Torres-Landrúa, 783 F.3d 58, 68 (1st Cir. 2015) (citation and internal quotation marks omitted).

---

[3] The lack of an adequate explanation can be characterized as either a procedural error or a challenge to the substantive reasonableness of the sentence. Compare United States v. Rodríguez-Castro, 492 F. App'x 137, 142 (1st Cir. 2012) (analyzing the adequacy of the explanation as a procedural claim), with United States v. Madera-Ortiz, 637 F.3d 26, 30-31 (1st Cir. 2011) (analyzing the same under substantive reasonableness). Although procedurally required, the explanation is also relevant to the substantive reasonableness inquiry. Cf. United States v. McDonough, 727 F.3d 143, 165 n.15 (1st Cir. 2013) (considering nominally procedural issue "to the extent that it bears on the reasonableness of [the defendant's] sentence").

There is no dispute that a district court can vary, even dramatically, from a guideline sentencing range based on the factors enumerated in § 3553(a).  See Gall, 552 U.S. at 49-50.  Nevertheless, "the fact that a sentencing court possesses the raw power to deviate from the guidelines does not mean that it can (or should) do so casually."  United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008).

Importantly, if the district court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  Gall, 552 U.S. at 50.  The justification presented should be commensurate with the degree of the variance such that "a major departure should be supported by a more significant justification than a minor one."  Id.; see also Martin, 520 F.3d at 91 (noting "a certain 'sliding scale' effect . . . in the penumbra of modern federal sentencing law"); cf. United States v. Ofray-Campos, 534 F.3d 1, 42-44 (1st Cir. 2008) (vacating and remanding for resentencing because the district court's explanation -- while sufficient to warrant a variance -- "was not sufficiently compelling to support" a sentence more than 24 years above the guideline range).  When faced with an inadequate explanation, "it is incumbent upon us to vacate, though not necessarily to reverse[,] the decision below to provide the district court an

-8-

opportunity to explain its reasoning at resentencing." United States v. Gilman, 478 F.3d 440, 446-47 (1st Cir. 2007) (citations and internal quotation marks omitted).

In this case, the district court varied from 70 months (the low end of the guideline range) to 13 days (the time already served) for two serious crimes. When explaining its decision to impose an extreme variance to an essentially non-incarcerative sentence, the district court focused exclusively on the defendant's potential for rehabilitation and low risk of recidivism. The district court did not explain how it had weighed the other factors laid out in § 3553(a), or why this particular sentence was appropriate in light of these factors. Critically, there is no explanation of how this sentence reflects the seriousness of the crimes committed, avoids sentencing disparities, promotes general deterrence, or promotes respect for the law.

These factors cannot be left out of the sentencing calculus in cases like this. In United States v. Milo, 506 F.3d 71 (1st Cir. 2007), for example, we explained:

> Full contrition and even a zero risk of re-offense engage major concerns of sentencing; incarceration is then perhaps not needed to reform that individual, to protect the community from him and to deter him from committing new offenses. But punishment is also meant to deter others, affirming the seriousness of the crime and the penalties that others will likely face and the difficulty of avoiding punishment.

Id. at 76.  There, we held that the weight given to contrition, an indicator for rehabilitation, could not justify the district court's decision to sentence the defendant to time served (18 days) when the PSR calculated a guideline sentencing range of 151 to 188 months for a drug trafficking offense.  Id. at 72-73, 76-77; see also Martin, 520 F.3d at 94 (citing Milo as an example of the limits on a district court's reliance on rehabilitation).

To be clear, we do not decide whether the sentence imposed in this case is substantively unreasonable.  We reach only the antecedent question of whether the district court provided an adequate explanation for such a large variance.  It did not.[4]  The court's explanation focused on the defendant's own potential for rehabilitation to the exclusion of other important sentencing factors.  The district court's explanation is incomplete, and hence inadequate, to justify the extent of the variance imposed.

In other circumstances, we have filled in the gaps in a district court's reasoning by looking to the arguments made by the parties or laid out in the PSR.  See United States v. Turbides-Leonardo, 468 F.3d 34, 40-41 (1st Cir. 2006); see also United States v. Dávila-González, 595 F.3d 42, 48-49 (1st Cir. 2010).

---

[4]  For the same reason, this is not a case in which the district court simply gave more weight to some sentencing factors over others.  Cf. United States v. Clogston, 662 F.3d 588, 592-93 (1st Cir. 2011).  We cannot defer to the district court's decision concerning the relative weight of relevant factors when these factors are left unexplained.

Nevertheless, "there are limits." Gilman, 478 F.3d at 446; see also United States v. Perazza-Mercado, 553 F.3d 65, 75 (1st Cir. 2009). We are unwilling to infer that the court adequately considered the other § 3553(a) sentencing factors from the record in this case for two reasons.

First, and consistent with Supreme Court precedent in this area, the extent of the variance requires a more significant justification that must be made explicit. See Gall, 552 U.S. at 50. We note that there is no "mathematical formulation" to apply in this analysis. See id. at 49. Nor is there a presumption that such variances are unreasonable. See id. at 47. Rather, we hold, as did the Supreme Court, that major variances in either direction must be accompanied by an adequate explanation of the reasoning. See id. at 50; see also Peugh v. United States, 133 S. Ct. 2072, 2084 (2013) (citing Gall, 552 U.S. at 51).

Accordingly, we have repeatedly advised sentencing courts that "[t]he level of detail required varies depending on the circumstances." United States v. Madera-Ortiz, 637 F.3d 26, 31 (1st Cir. 2011) (citation and internal quotation marks omitted). A "sentence[] that fall[s] inside a properly calculated guideline sentencing range require[s] a lesser degree of explanation than those that fall outside the guideline sentencing range." Turbides-Leonardo, 468 F.3d at 41. The greater explanation required for a greater variance must be made on the record "to allow for

-11-

meaningful appellate review and to promote the perception of fair sentencing."  See Gall, 552 U.S. at 50; see also United States v. Arango, 508 F.3d 34, 47 (1st Cir. 2007) (stating that "[a]n explanation in open court also furthers the weighty goals of transparency and credibility for the justice system").

This explanation requirement applies regardless of the direction of the variance -- up or down.  See Turbides-Leonardo, 468 F.3d at 41.  In this case, a more thorough explanation was required since the district court varied so dramatically to a non-incarcerative sentence without explicitly articulating its evaluation of factors other than rehabilitation.  The same would hold true if, for example, a district court varied upwards despite a much lower guideline sentencing range without an adequate explanation of its consideration of all relevant factors.  See, e.g., United States v. Franquiz-Ortiz, 607 F.3d 280 (1st Cir. 2010) (per curiam).  Indeed, in United States v. Medina, 779 F.3d 55 (1st Cir. 2015), we have just vacated two of a defendant's conditions of supervised release and remanded for resentencing since the conditions of release were inadequately justified.  See id. at 62-64, 71-73.

Second, the district court's consideration of the neglected factors is far from self-evident from the record here.  Indeed, at the second sentencing hearing, the government argued that "the focus should not only be rehabilitation," and asked that

-12-

the sentence imposed "be one that also promotes respect for the law, takes into consideration the seriousness of this offense, and considers what is the just punishment that should be provided for the offense." The district court did not conduct an on-the-record evaluation of these factors, which are explicitly set forth in § 3553(a). Rather, it agreed only that "you have to take into account the personal history and characteristics of the defendant," and did not repeat the other factors. It erroneously stated that it was "not so sure that [the message sent to society] is one of the criteria." Yet, "public confidence in enforcement of the law is itself a value" recognized in § 3553(a). See Milo, 506 F.3d at 76; see also 18 U.S.C. § 3553(a)(2) (requiring sentences "to promote respect for the law" and "to afford adequate deterrence to criminal conduct"). Indeed, when discussing general deterrence, the Sentencing Guidelines expressly refer to the need for "a clear message [to] be sent to society." U.S.S.G. ch. 4, pt. A, introductory cmt.

In addition, the government argued that the sentence should "avoid potential sentencing disparities among similarly situated individuals." The government advocated comparing the defendant to others who had pled guilty to possession of child pornography pursuant to a plea agreement. The government added that relevant sentences in the District of Puerto Rico had ranged from 30 months to 120 months. In response, the district court

noted that it had "done variances and . . . given long supervised release terms and no incarceration" in similar cases. Moreover, the district court expressed its belief that, "when there is a plea agreement, the issue of sentencing disparity is not as great as when you have trials." Although defendants who plead guilty are not similarly situated to those who do not, see United States v. Rodríguez-Lozada, 558 F.3d 29, 45 (1st Cir. 2009), sentencing disparities among only defendants who plead guilty are still important. In this analysis, "consideration of sentencing disparity primarily targets disparities among defendants nationally." United States v. Ayala-Vázquez, 751 F.3d 1, 32 (1st Cir. 2014) (citation and internal quotation marks omitted).

Finally, the district court mentioned the seriousness of "the offense" once, in boilerplate fashion, after announcing the sentence. The seriousness of these two crimes cannot be understated. The possession of child pornography is far from a "victimless crime." See Paroline v. United States, 134 S. Ct. 1710, 1727 (2014). Children are subjected to abuse, degradation, and rape for the prurient perusal of those who keep purveyors of these images in business. And, this defendant was also convicted of transferring obscene material to a minor. Specifically, he attempted to lure an apparent 12-year-old female victim into a sexual relationship over the course of eight months. Beyond the serious harm inherent in the possession of child pornography, this

particular crime bore the potential to directly destroy a young victim's normal life.  Yet, the district court provided no explanation as to how any of this weighed in its sentencing decision.

In sum, there is an inadequate justification for the extreme variance imposed since the district court did not explain its consideration, if any, of several critical sentencing factors. These include the need for the sentence imposed to reflect the seriousness of the crimes committed, to promote respect for the law, to deter others, and to avoid sentencing disparities nationwide.  We cannot and will not infer the district court's reasoning on these factors based on the record in this case and the degree of the variance imposed.  We do not decide whether the sentence imposed would be reasonable if supported by a fuller explanation.  We <u>vacate</u> the sentence and <u>remand</u> for resentencing with instructions for the district court to consider, and explain, all relevant sentencing factors for any sentence it imposes.

<u>So ordered</u>.


- Dissenting Opinion Follows -

-15-

**TORRUELLA, <u>Circuit Judge</u>, Dissenting.** With due respect to the majority, I am forced to dissent because I cannot support what, in my view, is a selective reading of the record. Applying the highly deferential standard of review mandated, I find the district court's explanation adequate. Thus, I would affirm defendant's sentence.

The majority states that the "court's exclusive focus was on the personal history and characteristics of the defendant" to the exclusion of the other § 3553(a) factors, and that the district court did not "explicitly articulat[e] its evaluation of factors other than rehabilitation." Moreover, it concludes that the district court's explanation of the sentence "focused exclusively on the defendant's potential for rehabilitation and low risk of recidivism." However, a careful review of the entire record reveals that the district court considered all the § 3553(a) factors, explicitly articulated its evaluation of these factors, and, in adequately explaining its chosen sentence, emphasized the factors that it considered salient.

The majority's reading of the record is selective even regarding the importance given by the district court to defendant's rehabilitation and low risk of recidivism. In this regard, the majority nowhere mentions other considerations to which the district court gave substantial weight, as is evident from its explanation, such as the defendant's mental health (his severe

-16-

depression) and his high suicidal risk, defendant's progressive recovery from these conditions, and the extent to which future imprisonment may have a detrimental effect in this recovery process. For example, the majority mentions that Dr. Vanessa Berríos testified at the second sentencing hearing about the defendant's low risk of recidivism. Yet, Dr. Berríos's psychosexual assessment report, as well as her testimony, was far more comprehensive than that. It covered defendant's battle with depression since a young age, his high suicidal risk, his remorse, and the lack of evidence suggesting sexual attraction to minors or pedophile tendencies. Also, Dr. Berríos testified that the mental health treatment the defendant would receive while incarcerated would be inadequate as it would not be sex-offender treatment. Nor does the majority mention that a Forensic Polygraph Report provided to the court concluded that defendant had not engaged in deception during his examination when he answered that he had never chatted with any other minor about sex and that he had never violated any court condition.

As recognized by the majority, the court stated that it "ha[d] taken into consideration all the evidence that is really on the record." This inevitably included the two psychosexual assessment reports, the Forensic Polygraph Report, the testimony of Dr. Berríos, and the sentencing memoranda from the parties, which included a discussion of all the sentencing factors. This

-17-

statement should be given "significant weight." See United States v. Torres-Landrúa, 783 F.3d 58, 69 n.12 (1st Cir. 2015) (quoting United States v. Santiago Rivera, 744 F.3d 229, 233 (1st Cir. 2014)).

Also, contrary to what the majority states, the district court did consider and articulate its evaluation of the seriousness of the offense in this case. The district judge clearly stated that he was "not going to belittle the offense. It's a very serious offense." He further stated that "given the offense conduct, the court is at a crossroads as to the potential for this defendant to replicate this kind of conduct in the future. I read this offense conduct, and I was somewhat shocked." In addition, the district judge also stated that he wanted to be sure "that the defendant [did] not pose a threat to society in the sense of coming forward and doing anything to children." The court's consideration of the seriousness of the offense is also supported by the fact that it correctly calculated and carefully reviewed the Guidelines range, inasmuch as the seriousness of the offense "was clearly considered by the Sentencing Commission when setting the Guidelines ranges." See United States v. Gall, 552 U.S. 38, 54 (2007).

The district court also considered and articulated its evaluation of the need to avoid potential sentencing disparities. In fact, the majority's recounting of what was argued at the sentencing hearing regarding the need to avoid sentencing

disparities, and the district court's response to these arguments belie the statement that it did not consider this factor. In response to the government's argument that the need to avoid potential sentencing disparities warranted a within-the-Guidelines sentence, the district judge responded that "in cases similar to this for possession of child pornography . . . I have done variances and I have given long supervised release terms and no incarceration." He also noted that the defendant had pled guilty, instead of going to trial, and that "the issue of sentencing disparity is not as great as when you have trials." This leads to the inevitable conclusion that the district court did in fact consider the need to avoid potential sentencing disparities. Furthermore, the Supreme Court has stated that when a district court correctly calculates and carefully reviews the Guidelines range, as it did here, it necessarily gives significant weight and consideration to the need to avoid unwarranted disparities. See Gall, 552 U.S. at 54 ("As with the seriousness of the offense conduct, avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.").

The record also shows that the district court considered the need for deterrence and to promote respect for the law. Regarding these factors, the district judge stated that defendant was extremely remorseful and that he was convinced that defendant will never engage in the same kind of conduct. The court was of the view that "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." Gall, 552 U.S. at 54.

From the discussion above, it is evident that the court did not focus on "the personal history and characteristics of the defendant" to the "exclusion of other important sentencing factors" in giving a variant sentence, as the majority mistakenly concludes. In this case, the record makes manifest that the court pondered all the sentencing factors and decided, within its discretion, to give more weight to the history and characteristics of the defendant, which it considered a salient factor, and for which it even relied on expert testimony, as it explained at the sentencing hearings. "While a sentencing court must consider all of the applicable section 3553(a) factors, it is not required to address those factors, one by one, in some sort of rote incantation when explicating its sentencing decision." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006); see also United States v. Zapata-

Vázquez, 778 F.3d 21, 23 (1st Cir. 2015) ("Parsing through the section 3553(a) factors mechanically is not required." (alterations omitted) (internal quotation marks and citation omitted)). "Nor is there any requirement that a district court afford each of the section 3553(a) factors equal prominence. The relative weight of each factor will vary with the idiosyncratic circumstances of each case, and the sentencing court is free to adapt the calculus accordingly." Dixon, 449 F.3d at 205 (internal citation omitted). The same is true even when variant sentences are at issue. See United States v. Del Valle-Rodríquez, 761 F.3d 171, 177 (1st Cir. 2014) (holding that "a sentencing court's obligation to explain a variance requires the court to offer a plausible and coherent rationale -- but it does not require the court to be precise to the point of pedantry"); United States v. Aponte-Vellón, 754 F.3d 89, 94 (1st Cir. 2014) (affirming variant sentence and holding that "[a]dmittedly, the district court did not go through each of the § 3553(a) factors one by one, but our caselaw does not demand such an exhaustive approach"); Santiago-Rivera, 744 F.3d at 233 (affirming variant sentence and holding that "the court below may not have waxed longiloquent but 'brevity is not to be confused with inattention'" (quoting United States v. Turbides-Leonardo, 468 F.3d 34, 42 (1st Cir. 2006))).

Furthermore, this court has held that when the sentence is outside of the Guidelines range, "[t]he court's reasons for

deviation should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender." United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008) (emphasis added); see also Santiago-Rivera, 744 F.3d at 234. That is precisely the case here, and the district court acted within its discretion in following that principle.

The majority also states that this court will not fill in "the gaps in [the] district court's reasoning by looking to the arguments made by the parties or laid out in the PSR" because of "the extent of the variance," its conclusion that the court failed to articulate its evaluation of factors other than rehabilitation, and its belief that it is not self-evident from the record that the district court considered said factors. My disagreement with these statements is two-fold. First, as previously discussed, it is clear from the record that the court did evaluate (and articulate its evaluation of) factors other than rehabilitation. Second, this court has previously emphasized the importance of the appellate court reviewing "the record as a whole to gauge the sentencing judge's thought process." United States v. Gallardo-Ortiz, 666 F.3d 808, 813 (1st Cir. 2012) (internal quotation marks omitted) (quoting United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011)). To that effect, this court has been willing to fill in the gaps in order to affirm upwardly variant sentences. See, e.g., Santiago-Rivera, 744 F.3d at 233 (affirming upwardly variant

sentence and holding that "any gaps in the court's reasoning can easily be filled by 'comparing what was argued by the parties or contained in the pre-sentence report with what the judge did'" (quoting United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006))). Clearly, this must cut both ways and not only in cases involving upwardly variant sentences.

In sum, we "must review all sentences -- whether inside, just outside, or significantly outside the Guidelines range -- under a deferential abuse-of-discretion standard." United States v. Prosperi, 686 F.3d 32, 50 (1st Cir. 2012) (quoting Gall, 552 U.S. at 41). "Gall teaches that it is error to allow the dramatic nature of variance to unduly influence our review for substantive reasonableness." Id. (quoting United States v. Thurston, 544 F.3d 22, 25 (1st Cir. 2008)). "We have acknowledged that even when we believe that a § 3553(a) goal is not met by a sentence, we must consider the totality of the circumstances, and in particular whether the sentence sacrifices that goal to satisfy other legitimate competing interests of the sentencing regime." Id. Applying these principles to the instant case, I am convinced that the defendant's sentence must be affirmed. While the district court's explanation for the sentence imposed focused on the factors it considered more salient and did not explain some of the government's contended § 3553(a) factors at the same length as others, "[t]hat the sentencing court chose not to attach to certain

-23-

. . . factors the significance that the appellant thinks they deserved does not make the sentence unreasonable." Clogston, 662 F.3d at 592 (citing United States v. Anonymous Defendant, 629 F.3d 68, 78 (1st Cir. 2010)). Because the district court considered all the relevant § 3553(a) factors to some degree, gave serious consideration to the extent of the departure from the Guidelines, and sufficiently explained the basis for its chosen sentence, deference should be given to the sentencing court. Gall, 552 U.S. at 51. Since the majority fails to do so, I respectfully dissent.

Finally, I want to emphasize that, on remand, the district court should not be dissuaded from imposing the sentence of its choosing. The district court may very well, within its discretion, impose the same sentence of time served on defendant. If it decides to do so, I strongly encourage it to explain its chosen sentence in more detail, so that we may finally put an end to this case.